**Santo SCALA, Plaintiff–Appellee,**

v.

**MOORE McCORMACK LINES, INC., Defendant–Appellant.**

**No. 629, Docket 92–7817.**

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1992.

Decided Feb. 9, 1993.

Jethro M. Eisenstein, New York City (Profeta & Eisenstein, Fred R. Profeta, Jr., of counsel), for plaintiff-appellee.

Robert J. Giuffra, New York City (Dougherty, Ryan, Giuffra, Zambito & Barra, John J. Hession, of counsel), for defendant-appellant.

Before: LUMBARD, WINTER, and MAHONEY, Circuit Judges.

LUMBARD, Circuit Judge:

Moore McCormack Lines, Inc. ("Mormac") appeals from a judgment entered on a jury verdict in the Southern District of New York, Grubin, *Mag. J.*,[1] awarding Santo Scala $1,989,255.57 for injuries he sustained while working as a longshoreman on Mormac's vessel, the S.S. Mormacargo.

Mormac argues: (1) the jury's award of damages for pain and suffering must be reduced because it exceeds the amount prayed for by Scala in his complaint and is excessive; (2) the evidence was insufficient to establish Mormac's liability under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (1988);

---

1. This matter comes to us on direct appeal from a magistrate judge pursuant to 28 U.S.C. § 636(c)(3) (Supp.1992) and Fed.R.Civ.P. 73(c).

and (3) the magistrate judge misinstructed the jury about Mormac's duty of care. Scala asks us to consider whether Mormac's appeal was timely filed. Because the jury's award was excessive, we vacate the judgment and remand to the district court with instructions.

When he was injured, Scala, 33 years old, was employed by the International Terminal Operating Company. He began working on the docks at 18 and had spent most of his career unloading ships at the 23rd Street Pier in Brooklyn.

On November 22, 1977, Scala was on the S.S. Mormacargo, unloading coffee from the upper " 'tween deck." As he descended a ladder and walked aft, he slipped and fell, landing on his left side. Although he had not seen anything before he fell, Scala noticed that his side was wet from fluid on the deck. As he lay on the deck awaiting help, he felt a drop of fluid, and, looking up, he saw that a hose on the underside of the hatch cover above him had a rag wrapped around it and was dripping.

Scala injured tendons and cartilage in his left knee. During the following months, several physicians treated him, and he underwent two arthroscopic surgeries, one in September of 1978 and one in March or April of 1979. Following the second surgery, he developed phlebitis and remained bedridden for some time. Thereafter, he spent six months in a wheelchair and then used crutches. Scala also suffered several attacks of temporary paralysis which caused him to collapse and led to his hospitalization. During one such attack, he fell and broke an arm. Scala's injuries caused depression for which he eventually sought psychiatric treatment. He also claims that the accident aggravated an existing back injury, and he has been diagnosed as having a herniated disk.[2]

Scala experiences occasional pain and swelling in his knee and suffers from chronic back pain. His medical expert testified that it is likely that his pain will worsen as he ages. Since the accident, Scala has been unable to work as a longshoreman. He has tried other jobs, including assisting an electrician and driving a delivery truck, but in each instance he had to stop working.

In 1979, Scala brought suit against Mormac in New York Supreme Court, Kings County. He alleged that his injuries were due to Mormac's negligence and the unseaworthiness of the Mormacargo;[3] he demanded judgment in the amount of $500,-000.

While the action was pending, Mormac was purchased by United States Lines, Inc., which subsequently filed for bankruptcy in the Southern District. On motion of the debtor, this action was transferred to the district court pursuant to 28 U.S.C. § 157(b)(5). *In re United States Lines*, No. 90 M. 47 (MP) (S.D.N.Y. Nov. 19, 1990). After the case was assigned to Edelstein, J., the parties consented to trial before a magistrate judge.

Trial commenced on March 30, 1992. At the close of Scala's case, the court denied Mormac's motion to dismiss Scala's complaint for failure to establish a prima facie case.[4] At the close of all the evidence, Mormac made no motions.

The jury found Mormac 100% at fault and awarded Scala $250,000 in lost past earnings, $266,478.47 in lost future earnings, $500,000 for past pain and suffering, and $1,000,000 for future pain and suffering. Immediately after the jury was discharged, the court denied Mormac's motion to set aside the verdict as against the weight of the evidence, for its excessive

---

**2.** Although Scala's medical expert was unable to say with a reasonable degree of medical certainty that Scala's back problems resulted from his fall, we believe that the jury could reasonably have inferred this from Scala's testimony that his back pain recurred and intensified after the accident.

**3.** Although Scala's original complaint asserted claims of negligence and unseaworthiness, the

parties' joint pre-trial order stated that the action was a single claim arising under 33 U.S.C. § 905(b). *See* Fed.R.Civ.P. 16(e) (pre-trial order "shall control the subsequent course of the action").

**4.** We treat this as a motion pursuant to Fed. R.Civ.P. 50(a) for judgment as a matter of law.

amount, and because it was more than the amount Scala prayed for in his complaint. Judgment was entered on April 10, 1992.

On April 27, 1992, Mormac moved pursuant to Fed.R.Civ.P. 50(b) and 59 for judgment as a matter of law, a new trial, and remittitur. The magistrate judge denied Mormac's motions on July 2, 1992, and Mormac filed notice of this appeal on July 29, 1992.

### A. Timeliness of the Appeal

Federal Rule of Appellate Procedure 4(a)(1) provides that a notice of appeal must be filed within 30 days of entry of the judgment or order from which the appeal is taken. The time for appeal may be tolled, however, by a post-judgment motion filed in the district court pursuant to Fed. R.Civ.P. 50(b), 52(b), or 59. Fed.R.App.P. 4(a)(4). Mormac filed post-judgment Rule 50(b) and Rule 59 motions in the district court. Scala contends, however, that these motions were "defective," and therefore they did not toll the time for appeal. We disagree.

■ A post-trial motion will not toll the time for appeal if it is untimely, see *Branum v. Clark*, 927 F.2d 698, 704 (2d Cir. 1991), or invalid on its face. *See Martinez v. Trainor*, 556 F.2d 818, 820 (7th Cir.1977). Although the magistrate judge noted the possibility that Mormac's motions were procedurally barred,[5] the motions were neither untimely nor facially invalid, and the magistrate judge addressed them on their mer-

its.[6] Accordingly, Mormac's motions tolled the time for appeal, and this appeal was timely filed. *See* Fed.R.App.P. 4(a)(4).

### B. Scala's Demand for Judgment

■ We reject Mormac's contention that the jury's award must be reduced because it exceeded the amount Scala demanded in his original complaint. Federal Rule of Civil Procedure 54(c) provides that a "judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." A party's recovery is limited to the amount prayed for in its demand for judgment only in cases where judgment is entered by default. Fed.R.Civ.P. 54(c); *accord Riggs, Ferris & Geer v. Lillibridge*, 316 F.2d 60, 62 (2d Cir.1963).

### C. Excessiveness of the Verdict

■ In reviewing a claim that the jury awarded excessive damages, we "view the evidence and draw all factual inferences in favor of the appellee," *Wheatley v. Ford*, 679 F.2d 1037, 1039 (2d Cir.1982) (citations omitted), and we "accord substantial deference to the jury's determination of factual issues." *Martell v. Boardwalk Enters.*, 748 F.2d 740, 750 (2d Cir.1984). Nevertheless, in the federal courts, a judgment cannot stand "where the damages awarded are so excessive 'as to shock the judicial conscience.'"[7] *Wheatley*, 679 F.2d at 1039.

---

**5.** Mormac's Rule 50(b) motion was barred by its failure to renew its Rule 50(a) motion at the close of all the evidence. *See Ebker v. Tan Jay Int'l, Ltd.*, 739 F.2d 812, 823 n. 13 (2d Cir.1984). Mormac's Rule 59 motion was barred because it was repetitive of its oral motion made after the jury returned its verdict.

**6.** The magistrate judge denied the motions "after thorough review of the defendant's submissions and cited authorities, as well as the evidence presented at trial and the jury's carefully executed special verdict form." Joint Appendix at 1029–30.

**7.** Mormac argues that we should apply New York's standard for reviewing jury verdicts, which provides that a jury's verdict will be set aside whenever it "deviates materially from

what would be reasonable compensation." N.Y.Civ.Prac.L. & R. § 5501(c) (McKinney's Supp.1993). Although Scala's original complaint was filed in state court and alleged common law claims, this action was tried as a claim arising under a federal statute. Accordingly, we apply the traditional federal "shocks the judicial conscience" standard of review. *See, e.g., Smith v. Nat'l R.R. Passenger Corp.*, 856 F.2d 467, 472 (2d Cir.1988) (applying federal standard to claim arising under Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*); *Petramale v. Local No. 17 of Laborers' Int'l Union*, 847 F.2d 1009, 1012 (2d Cir.1988) (applying federal standard to claim arising under Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.*); *Wheatley*, 679 F.2d at 1039 (applying federal standard to claim arising under Civil Rights Act, 42 U.S.C. § 1983).

In determining whether a particular award is excessive, courts have reviewed awards in other cases involving similar injuries, "bearing in mind that any given judgment depends on a unique set of facts and circumstances." *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 568 (2d Cir.1988). In *Castellano v. State*, 183 A.D.2d 800, 584 N.Y.S.2d 114 (2d Dep't 1992), the plaintiff slipped on an icy sidewalk, resulting in an injury to his knee which required two arthroscopic surgeries and forced him to retire from his job as a police officer. The court found the jury's award of $500,000 for pain and suffering to be excessive and ordered remittitur of damages over $200,000. In *Tejada v. City of New York*, 129 A.D.2d 697, 514 N.Y.S.2d 459 (2d Dep't 1987), the plaintiff sustained injuries similar to those here: an injured knee which required several surgical procedures and resulted in chronic pain in her back and knee. The court found an award of $1,426,431 to be "clearly excessive" and ordered it reduced to $700,000. *Id.*, 514 N.Y.S.2d at 460.[8]

■ In light of these awards and all of the circumstances of this case, we believe that the jury's award of $1,500,000 for Scala's past and future pain and suffering is so excessive as to "shock the judicial conscience." While a jury has broad discretion in measuring damages, it " 'may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket.' " *Nairn*, 837 F.2d at 568 (quoting *Gumbs v.*

*Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir.1987)). It appears that the jury did just that, and therefore the award cannot stand. Having reviewed the evidence in this case and compared it to awards in similar cases, we believe that $750,000, which is one half of the jury's award, is fair compensation for Scala's past and future pain and suffering.

We have recently held that the Seventh Amendment bars us from simply reducing a jury's award. The plaintiff must be given the option of a new trial on the issue of the damages found to be excessive. *Vasbinder v. Scott*, 976 F.2d 118, 122–23 (2d Cir.1992); *accord Phelan v. Local 305, United Association of Journeymen*, 973 F.2d 1050, 1064 (2d Cir.1992) (collecting cases). We therefore vacate the judgment and remand to the district court with instructions to enter judgment in the amount of $1,239,255.57, or, at Scala's option, to order a new trial on the issue of damages for pain and suffering.

### D. *Mormac's Other Contentions*

■ Mormac waived any objection to the sufficiency of the evidence by failing to renew its Rule 50 motion at the close of all the evidence. *See Hilord Chem. Corp. v. Ricoh Elecs., Inc.*, 875 F.2d 32, 38 (2d Cir. 1989); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2536, at 593 (1971 and 1992 Supp.) (collecting cases). Such failure bars the assertion of this issue on appeal except in rare circumstances which are not present here.[9]

---

**8.** Other recent awards for similar injuries include: *Bisbee v. Indep. Coach Corp.*, 182 A.D.2d 661, 582 N.Y.S.2d 255 (2d Dep't 1992) (affirming award of $253,000 for injury to knee which required several operations and procedures to repair and alleviate pain); *Stern v. Calzado*, 163 A.D.2d 299, 557 N.Y.S.2d 156 (2d Dep't 1990) (affirming award of $500,000 for pain and suffering from a fractured rib, chondromalacia of the left patella, and injury to the back); *Gonzalez v. Manhattan and Bronx Surface Transit Operating Auth.*, 160 A.D.2d 420, 554 N.Y.S.2d 116 (1st Dep't 1990) (award of $1.2 million for pain and suffering for torn knee cartilage sustained in car accident was excessive and should be reduced to $600,000); *Rose v. Rose*, 148 A.D.2d 693, 540 N.Y.S.2d 204 (2d Dep't 1989) (award of $295,000 for three fractured vertebrae and soft tissue damage to knee was excessive

and should be reduced to $175,000); *Menga v. Raquet*, 150 A.D.2d 434, 541 N.Y.S.2d 43 (2d Dep't 1989) (affirming award of $350,000 for cartilage damage to knee).

**9.** In *Ebker*, 739 F.2d at 823, we set forth two criteria which must be met before a failure to renew a Rule 50 motion at the close of all the evidence will be excused. As we later explained, the first concerned the trial judge's indication that renewal of the motion would be unnecessary. The second concerned the nature of the evidence following the unrenewed motion. The test for determining whether that evidence will excuse non-renewal of the motion is whether it was of such a character that the opposing party could not reasonably have thought that the moving party's initial view of

We also reject Mormac's contention that the magistrate judge misinstructed the jury regarding a shipowner's duty of care under 33 U.S.C. § 905(b). The jury instructions closely paralleled the Supreme Court's holding in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 166–67, 172, 101 S.Ct. 1614, 1621–22, 1624, 68 L.Ed.2d 1 (1981). *See Kakavas v. Flota Oceanica Brasileira, S.A.*, 789 F.2d 112, 119–20 (2d Cir.) (reversing where jury instruction departed from standards set forth in *Scindia*), *cert. denied*, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986).

Vacated and remanded with instructions.

the insufficiency of the evidence had been overcome and there was no need to produce anything more in order to avoid the risk of judgment as a matter of law. *See Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 587 n. 3 (2d Cir.1987). Neither of those criteria are met here.