**Stephen B. BEAN, Plaintiff,**

v.

**CSX TRANSPORTATION, Defendant.**

**No. 01–CV–1047 (DRH).**

United States District Court,
N.D. New York.

Oct. 23, 2003.

O'Connell & Aronowitz (Stephen R. Coffey, Esq., Andrew R. Safranko, Esq., Aaron A. Louridas, Esq., of Counsel), Albany, NY, for Plaintiff.

McNamee, Lochner, Titus & Williams, P.C. (Scott A. Barbour, Esq., of Counsel), Albany, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Plaintiff Stephen B. Bean ("Bean"), an employee of defendant CSX Transportation ("CSX"), brought this action under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, alleging that the negligence of CSX caused an injury to his back on May 3, 2000. A five-day jury trial concluded on April 2, 2003 with an award of damages to Bean in a gross amount of $1,540,082.00 with a finding that Bean was 35% contributorily negligent. Judgment was entered for Bean against CSX in a total amount of $1,001,053.30 on April 4, 2003. Presently pending is the motion of CSX for (1) judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), (2) a new trial or remittitur as to damages for past and future pain and suffering pursuant to Fed.R.Civ.P. 59, and (3) a stay of execution to enforce the judgment pending disposition of this motion pursuant to Fed.R.Civ.P. 62(b).[1] Docket No. 59. Bean opposes the motion. Docket Nos. 68, 69. For the reasons which follow, CSX's motion is denied in all respects.

### I. Background

Bean, now forty-seven, commenced employment with the predecessor railroad to CSX in 1976 and remained steadily employed there until the accident at issue

herein on May 3, 2000. On that date, Bean's duties at the Selkirk, New York railroad yard included the maintenance and repair of signal devices. Bean was directed that day to repair a signal at the site of a car derailment. He drove to the site in a 1996 Freightliner boom truck. The truck consisted of a flat-bed attached approximately four feet above the ground to the chassis and cab of the truck and with a crane-type device on the bed to assist in lifting and suspending heavy objects. *See, e.g.,* Barbour Aff. (Docket No. 51) at Ex. C. Bean performed his repair duties from the flat-bed of the boom truck and began to descend from the flat-bed using handrails and steps affixed to the flat-bed and the truck cab. As he stepped off the flat-bed to the first step, Bean missed the step, lost his grip, and fell to the ground, landing on his back. As discussed in greater detail in subsection II(B) *infra,* the fall seriously injured Bean's back, requiring surgery and leaving him permanently disabled. This action followed.

## II. Discussion

CSX's motion presents two issues: whether the Court erred in evidentiary rulings and jury instructions as to safety standards for the boom truck ladder and whether the award of damages for pain and suffering was excessive.

### A. Safety Standards

#### 1. Legal Standard

A motion for judgment as a matter of law under Rule 50 should be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the

---

**1.** Bean agreed not to seek any enforcement of the judgment pending a decision on this motion. Coffey Aff. (Docket No. 68) at ¶ 65.

With the filing of this decision, CSX's request becomes moot and is, therefore, denied.

nonmoving] party on that issue." Fed. R.Civ.P. 50(a)(1). The standard under Rule 50 "mirrors" that for a motion for summary judgment under Fed.R.Civ.P. 56. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion under Rule 50, a court must consider all evidence in the record and not simply the evidence favorable to the nonmovant. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir.2001). "In doing so, however, the court must draw all reasonable inference in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 149, 120 S.Ct. 2097 (citations omitted). Thus, in reviewing the entire record, a court should consider only that evidence favorable to the nonmoving party and any evidence supporting the moving party which is uncontradicted and unimpeached. *Id.*

The standard for granting a new trial under Rule 59 is less demanding. "[U]nlike a motion for judgment as a matter of law, a trial judge considering a motion for a new trial is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *United States v. Landau*, 155 F.3d 93, 104 (2d Cir.1998) (internal quotations and citation omitted); *see also Funk v. F & K Supply, Inc.*, 43 F.Supp.2d 205, 224 (N.D.N.Y.1999) (McAvoy, J.). Thus, " 'a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict.' " *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir.2000) (quoting *Landau*, 155 F.3d at 104). A court should grant a new trial if

"convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Caruolo*, 226 F.3d at 54 (internal quotations and citation omitted).[2]

## 2. Appropriate Standards

At trial, Bean asserted that the safety standards applicable to the boom truck handholds, handrails and steps [hereinafter the ladder] were set forth in the regulations of the Occupational Safety and Health Administration (OSHA) at 29 C.F.R. § 1910.27. CSX asserted that the applicable safety standards for the ladder were those contained in the regulations of the United States Department of Transportation (USDOT) at 49 C.F.R. pt. 399. CSX contends that the Court erred when it (1) permitted Bean to offer evidence that the boom truck ladder violated the OSHA safety standards, and (2) precluded the jury from considering evidence that the boom truck ladder complied with the USDOT safety standards.

■ According to Bean's expert witness, Ernest J. Gailor, P.E., the boom truck ladder failed to comply with the OSHA safety standards for fixed ladders contained in 29 C.F.R. § 1910.27 in several respects. The deficiencies included the failure of the handholds to extend 42" above the flat-bed, the handholds did not have the same spacing as the siderails of the ladder, and the distance between the rungs of the ladder exceeded 12" and were not of uniform distance. Gailor Trial Tr. (Docket No. 68, Ex. B) at 14–42. The OSHA regulations apply to the boom truck ladder unless the OSHA standards have been preempted by the regulations of another federal agency. 29 U.S.C. § 653(b)(1) ("Nothing in this chapter shall

---

**2.** As to the legal standard applicable to defendants' motion for remittitur, see section II(B) *infra.*

apply to working conditions of employees with respect to which other Federal agencies ... exercise statutory authority to prescribe or enforce standards or regulations effecting occupational safety and health."). To "exercise" statutory authority requires more than the mere existence of such authority by another federal agency. Such authority must be actually exercised for the OSHA regulations to be preempted. *See Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235, 241, 122 S.Ct. 738, 151 L.Ed.2d 659 (2002).

■ As at trial, CSX contends that the USDOT regulations preempted the OSHA standard and provided the appropriate standard by which to assess the boom truck ladder. Under the Motor Carrier Safety Act, 49 U.S.C. § 31136, USDOT was authorized to enact "regulations on commercial motor vehicle safety." Such regulations were enacted in 49 C.F.R. §§ 350–399. Subpart L of part 399 "prescribes step, handhold and deck requirements on commercial motor vehicles." 49 C.F.R. § 399.201 ("Purpose and scope"). According to CSX's expert witness, Robert L. MacFarland, a motor carrier safety con-

sultant, the boom truck ladder complied with the USDOT safety standards for ladders contained in 49 C.F.R. § 399.207 in all material respects. MacFarland Trial Tr. (Docket No. 68, Ex. C) at 6–32.

Before and during trial, both parties moved to preclude, and objected to, the testimony of the other's expert witness regarding the applicable safety regulation for the boom truck ladder. Before trial, the Court denied the motions to preclude of both parties on the ground that on the record presented on those motions, it could not be reasonably determined which standard applied to the boom truck.[3] However, during the cross-examination of CSX's expert, the expert agreed that the boom truck here did not meet the definition of vehicles covered by the USDOT regulation. MacFarland Trial Tr. at 32–36. Bean's motion to strike the testimony of CSX's expert regarding the USDOT regulation was then granted and the jury was instructed, at that time and at the close of the case, to disregard testimony concerning the USDOT regulation and that they could consider the OSHA regulation.[4]

**3.** CSX's motion to preclude Bean's expert from testifying concerning a New York State regulation was granted before trial on the ground that the regulation did not apply to the boom truck here.

**4.** The jury was given final instructions on this point as follows:

Finally, you may consider the evidence which was presented concerning the customs in the industry and safety standards. If you find that there were such customs or standards, they may indicate recognition of a hazard and the means to avoid it, which you may consider as one indication of what may be reasonable in a given situation. On the other hand, you may find that an industry custom or a safety standard does not reflect the level of care which a reasonably prudent person would take and that, although an industry custom or safety standard was followed, CSX was negligent.

Similarly, even if you find that CSX violated or failed to follow a safety standard or did not take customary precautions, such a failure does not mandate a finding of negligence. Before you may impose liability, you must still find that CSX failed to exercise reasonable care in the circumstances. In this regard, you may consider the evidence presented concerning the safety standards set forth in the regulations issued by the Occupational Health and Safety Administration, or OSHA, found in Title 29 of the Code of Federal Regulations (CFR). However, as I previously instructed you, you must disregard all evidence presented concerning the safety standards set forth in the Motor Carrier regulations found in Title 49 of the CFR as those regulations do not apply to the boom truck involved in this case.
Jury Instructions (Docket No. 68, Ex. C) at 12–13.

Striking the testimony of CSX's expert regarding the USDOT safety standard, instructing the jury that it could consider only the OSHA standard, and denying CSX's motion to preclude and strike the testimony of Bean's expert regarding the OSHA standard were not erroneous rulings. Clearly, the OSHA standard was applicable in the absence of a preemptive regulation issued by another federal agency. USDOT issued regulations in this area governing commercial motor vehicles, but those regulations did not apply to the boom truck here. This conclusion is compelled for several reasons.

First, the plain language of both the USDOT authorizing statute and the regulation excludes the boom truck here from the scope of their coverage. That statute directs that "the Secretary of Transportation shall prescribe regulations on *commercial motor vehicle* safety." 49 U.S.C. § 31136(a) (emphasis added). "Commercial motor vehicle" is defined in § 31132(1) as "a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle [meets certain additional requirements.]" CSX made no showing here that the boom truck in question either was used to transport property of any kind or that it met any of the additional requirements of the definition. Thus, the boom truck was not within the scope of the statute which authorized the USDOT safety regulation for motor carrier ladders.

Similarly, the regulations enacted pursuant to 49 U.S.C. § 31136(a) were limited in application. The purpose and scope of the USDOT regulations is defined broadly as to "prescribe step, handhold, and deck requirements on commercial motor vehicles. These requirements are intended to enhance the safety of motor carrier employees." 49 C.F.R. § 399.201. However, the following subsection defines the applicability of the USDOT regulation as follows: "This subpart applies to all trucks and truck-tractors, having a *high profile cab-over-engine (COE)* configuration, for entrance, egress and back of cab access, manufacture on and after September 1, 1982." 49 C.F.R. § 399.203 (emphasis added). The regulations thereafter define "Cab-over-engine (COB)" as "a truck-tractor having all or the front portion, of the engine under the cab." 49 C.F.R. § 399.205. "High profile" is defined as a "COE having the door sill step above the height of the front tires." *Id.* Following the testimony of CSX's expert, there was and is no question of fact that the boom truck here was neither COE nor high profile. *See* Barbour Aff. (Docket No. 51) at ¶ 14 ("It is conceded that the boom truck used by plaintiff was not a 'cab-over-engine' type vehicle."). Thus, by its own terms the USDOT regulation was inapplicable to the boom truck ladder here.

Second, the legislative history of the Motor Carrier Safety Act of 1984, 49 U.S.C. §§ 31131–47, confirms that Congress intended that act and the regulations enacted thereunder to enhance the safety of vehicles used to transport passengers, property and hazardous waste in interstate commerce. It defined "commercial motor vehicle" to exclude from the coverage of the act those vehicles which served other purposes and whose safety was regulated by other provisions. *See, e.g.,* S.Rep. No. 98–424, at 6–7 (1984); *see also* 139 Cong. Rec. E2072–02, 1993 WL 295288 (Aug. 6, 1993) (extended remarks of Rep. Lipinski regarding amendments to the act). There has been no showing here that the boom truck was used to transport passengers or property interstate and its safety was covered by OSHA regulations. Thus, the legislative history as well supports the conclusion that the USDOT regulation did not apply to the boom truck ladder here.

Third, research has revealed no cases addressing the issue whether the USDOT regulation preempted the OSHA regulation as to the boom truck. Boom trucks may serve a variety of purposes and the purposes served by a particular truck may determine which safety standard applies to that truck. However, the only cases which research has revealed applying safety regulations to a boom truck since enactment of the USDOT regulations applied the OSHA regulation rather than that of US-DOT. *See National Eng'g & Contracting Co. v. Herman,* 181 F.3d 715, 723 (6th Cir.1999). Research has revealed no case applying the USDOT regulations to a boom truck.

Finally, reason supports the same conclusion. The purpose of the USDOT regulation was to enhance safety in the transportation in interstate commerce of passengers, property and hazardous waste. The purpose of the OSHA regulation was to enhance employee safety at work sites. The boom truck here was used essentially as a movable work site by CSX employees to maintain and repair equipment and was being used for that purpose only by Bean on May 3, 2000. Because, generally and specifically on May 3, 2000, the function and purpose of the boom truck here were as a work site rather than as a commercial motor vehicle, the OSHA and not the USDOT regulation was applicable.

For these reasons, it was not error for the Court to strike the testimony of CSX's expert regarding the USDOT regulation, admit testimony by Bean's expert as to the OSHA regulation, and instruct the jury that it could consider only the OSHA regulation. CSX's motion in this regard is denied.

### B. Damages for Pain and Suffering

■ The jury awarded Bean $300,000 for past pain and suffering and $800,000 for future pain and suffering which was stated as intending to compensate Bean over a period of twenty-eight years. Special Verdict (Docket No. 59, Ex. A) at 4. Both amounts were reduced by 35% based on the jury's finding of Bean's contributory negligence and, so reduced, were incorporated in the judgment. Docket No. 59. CSX now moves for a new trial or remittitur of these damages.

■ If a district court finds that damages awarded by a jury are excessive, it may grant a defendant's motion for a new trial in whole or limited to damages, or it may grant remittitur by conditioning denial of a defendant's motion for a new trial on a plaintiff's accepting damages in a reduced amount. *See Tingley Sys., Inc. v. Norse Sys., Inc.,* 49 F.3d 93, 96 (2d Cir. 1995); *Tanzini v. Marine Midland Bank,* 978 F.Supp. 70, 77 (N.D.N.Y.1997) (McAvoy, J.). Remittitur is "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Earl v. Bouchard Transp. Co.,* 917 F.2d 1320, 1328 (2d Cir. 1990) (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir. 1984)). "It is not among the powers of the ... court ... simply to reduce the damages without offering the prevailing party the option of a new trial." *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 914–15 (2d Cir.1997) (quoting *Tingley Sys., Inc.,* 49 F.3d at 96). A reduced award should represent "the maximum award that would not be excessive." *Ragona v. Wal–Mart Stores, Inc.,* 62 F.Supp.2d 665, 668 (N.D.N.Y.1999) (McAvoy, J.), *aff'd,* 210 F.3d 355 (2d Cir.2000).

■ The standard for review of damages awarded by a jury under a federal law such as the FELA is the traditional common law standard whether the award "shocks the conscience." *See Nairn v.*

*National R.R. Passenger Corp.*, 837 F.2d 565, 566–67 (2d Cir.1988) (quoting *Batch-kowsky v. Penn Cent. Co.*, 525 F.2d 1121, 1124 (2d Cir.1975)); *Mazyck v. Long Island R.R. Co.*, 896 F.Supp. 1330, 1336 (E.D.N.Y.1995). This standard, which is highly deferential to the jury's determination, differs from the standard applied to awards governed by state law, where the standard is whether the award "deviates materially from what would be reasonable compensation." N.Y. C.P.L.R. § 5501(c) (McKinney Supp.2003). Thus, "[i]n reviewing claims that the jury awarded excessive damages, the court views the evidence and draws all inferences in favor of the ... plaintiff, and accords substantial deference to the jury's determination of factual issues." *Bachir v. Transoceanic Cable Ship Co.*, No. 98 Civ. 4625(JFK), 2002 WL 413918, at *10 (S.D.N.Y. Mar. 15, 2002) (citing *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993)).

■ The analysis of a jury award is necessarily informed by the particular facts of each case. *See Scala*, 985 F.2d at 684. Here, the evidence supporting Bean's claim for damages came principally from the testimony of Bean, his friends and his treating physician. Viewing that evidence in the light most favorable to Bean, it established the following. Bean, age forty-three at the time of the accident, had worked for CSX or its predecessor companies since he was eighteen, had never previously suffered an injury to his back, and had never suffered any significant injury in the course of his employment which caused him to miss more than two days of work. Bean had also operated his own commercial cleaning business as a second employment for approximately twenty years while raising two children, now grown, as a single parent.

Following the accident on May 3, 2000, Bean completed work for the day and worked the following day. The pain in his back then grew to the point where Bean could not return to work and he has not worked since. Bean was treated for several months with medication and physical therapy. However, the pain, which he described as "excruciating," shooting pains in his leg and numbness in his feet, persisted and on October 23, 2000, Bean underwent surgery. The seven-hour surgery required incisions in Bean's stomach and back, the removal of two discs, a bone graft and fusion, and the insertion of two metal rods, six screws and other hardware in his back.

Since the surgery, Bean remains able to walk, bend and squat, albeit slowly. However, the damage to Bean's spine is permanent and severe, and Bean continues to experience pain, likely faces further surgery in the next two years to remove an additional disc, and he is totally disabled from further employment. Bean will continue to experience pain for the rest of his life which will affect normal life activities. For example, Bean now awakens from sleep ten to fifteen times each night from the pain. Before the accident, Bean enjoyed physical activity, particularly physical labor. Since the accident, Bean is unable to perform such work.[5]

5. At trial, CSX offered in evidence a videotape of less than sixty minutes duration which shows Bean assisting a friend in building a deck on the back of a house after his surgery. CSX contended that the videotape belied Bean's claims of disability and limitations. The videotape was played for the jury by the parties at least three times during the trial. Bean contended that the videotape showed a brief period out of a clandestine surveillance of him of over fifty hours and that the videotape actually corroborated his claims of disability and limitations. Viewing the videotape in the light most favorable to Bean, while

Thus, viewed in the light most favorable to Bean, the evidence at trial established that Bean's injury caused him severe and disabling pain in the past and will cause him at least moderate pain in the future, he is totally disabled from further employment, he is unable to perform the physical activities in life which he previously enjoyed, he faces further major surgery on his back, and the disabilities and limitations which resulted from the injury will continue for the remaining twenty-eight years which the jury found constituted his life expectancy. Whether the award of $1,100,000 in these circumstances "shocks the conscience" is guided by awards of damages for similar injuries in other cases.

A survey of such similar cases reveals that awards for pain and suffering for severe back injuries as high as $3,000,000 have been sustained in federal and state courts whether under the "shock the conscience" standard or under the less deferential state law standard. *See, e.g., Frazier v. Norfolk & Western Ry. Co.*, 996 F.2d 922, 925–26 (7th Cir.1993) (upholding award of $1,000,000 for past and future pain and suffering where injury resulted in surgery to remove two discs and chronic pain); *Scala*, 985 F.2d at 683–85 (reducing a total award of $1,500,000 for pain and suffering from back and knee injuries to $750,000 where plaintiff, a longshoreman who had fallen from a ladder, had undergone two arthroscopic surgeries and remained able to perform sedentary work); *Barrowman v. Niagara Mohawk Power Corp.*, 252 A.D.2d 946, 675 N.Y.S.2d 734, 737 (4th Dep't), *leave to appeal denied*, 92 N.Y.2d 817, 684 N.Y.S.2d 488, 707 N.E.2d 443 (1998) (upholding $3,000,000 award to plaintiff with herniated and ruptured discs

from a fall at work leaving him with neck and back pain for the rest of his life and unable to return to gainful employment); *Gonzalez v. Rosenberg*, 247 A.D.2d 337, 669 N.Y.S.2d 216, 216 (1st Dep't 1998) (upholding award of $750,000 to plaintiff who suffered a herniated disc, underwent two unsuccessful surgeries, was recommended for a third surgery, and had "considerable pain and debilitation"); *Poole v. Consol. Rail Corp.*, 242 A.D.2d 966, 662 N.Y.S.2d 905, 905–06 (4th Dep't 1997), *leave to appeal denied*, 91 N.Y.2d 908, 669 N.Y.S.2d 254, 692 N.E.2d 123 (1998) (upholding award of $2,000,000 to decedent who fell from a ladder and sustained a herniated disk, nerve root compression, radiculopathy and sexual impotence); *Leonard v. Unisys Corp.*, 238 A.D.2d 747, 656 N.Y.S.2d 495, 498 (3d Dep't 1997) (upholding award of $1,016,000 for back injury sustained when decedent's chair broke leaving her greatly debilitated and having an impact on her life which was "profound and devastating"); *Walsh v. State*, 232 A.D.2d 939, 648 N.Y.S.2d 816, 817 (3d Dep't 1996) (upholding award of $1,750,000 to electrician who fell while working and suffered permanent nerve damage and significant loss of function in his back and lower extremities, limb disfigurement and ongoing pain).

The pain and suffering incurred by Bean as a result of his injury on May 3, 2000, both past and future, were at the severe end of similar such injuries. Given the severity of that injury, its devastating impact on his life, the ongoing pain and disability, and the jury's unchallenged finding that Bean's life expectancy is twenty-eight years, the award of $1,100,000 for past and future pain and suffering falls well within

---

it depicts Bean bending, lifting light objects, and hammering nails while on one knee, none of the activities depicted are inconsistent with his claimed limitations, and the slowness and

periods of intermittent rest with which he is seen to perform those activities corroborates Bean's claimed limitations.

the range of similar such cases and does not shock the judicial conscience. CSX's motion on this ground is denied.

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that CSX's motion for (1) judgment as a matter of law and (2) a new trial or remittitur as to damages for past and future pain and suffering (Docket No. 59) is **DENIED** in all respects.

**IT IS SO ORDERED.**