Christopher AHLF, Plaintiff,

v.

**CSX TRANSPORTATION, INC., Defendant.**

**No. 1:02CV1349LEKDRH.**

United States District Court, N.D. New York.

Sept. 14, 2005.

Steven L. Kantor, Williamsville, NY, for Plaintiff.

Scott A. Barbour, McNamee, Lochner Law Firm, Albany, NY, for Defendant.

### MEMORANDUM–DECISION AND ORDER[1]

KAHN, District Judge.

Plaintiff Christopher Ahlf ("Plaintiff" or "Ahlf") sued his employer, Defendant CSX Transportation, Inc. ("Defendant" or "CSX"), under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"), for injuries sustained during the course of his employment. Complaint (Dkt. No. 1). After a jury trial, Plaintiff received a verdict of $1,750,000 for past and future pain and suffering and $471,000

in past and future lost wages, reduced by five percent attributable to a pre-existing condition, for a total award of $2,109,950. Jury Verdict (Dkt. No. 38). Presently before the Court is Defendant's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure or, in the alternative, for a remittitur, on the basis that the verdict is excessive as a matter of law, the percentage of the injury attributable to a pre-existing condition was against the weight of the evidence, and that the Court's failure to charge the jury concerning Plaintiff's duty to mitigate his damages was in error. Motion (Dkt. No. 42). For the following reasons, the motion is denied.

### I. BACKGROUND

Alhf began his employment with the Defendant in approximately March 1996. Trial transcript from February 8, 2005 ("Feb. 8 Tr.")[2] at 136. On December 5, 1999, while working as an engineer for Defendant, Plaintiff was injured when the train on which he was working was struck by another train. *Id.* at 147–48. As a result, Plaintiff was taken to the emergency room, where he complained of shoulder and back pain. *Id.* at 150. After being seen by a private physician, he was referred to Dr. James Striker ("Dr.Striker") of the Capital Orthopedic Group. On March 31, 2000, Plaintiff was referred to Dr. Robert Cheney ("Dr.Cheney"), a board certified orthopedic surgeon. *Id.* at 151. Plaintiff complained of pain on the right side of his body, including his lower back, buttock, and radiating leg pain. *Id.* at 21. Dr. Cheney found that Plaintiff was suffering from a herniated disk and spinal stenosis. *Id.* at 15. Observing that the pain medication and physical therapy prescribed by Dr. Striker failed to provide Plaintiff with significant pain relief, Dr.

**1.** For printed publication in the Federal Reporter.

**2.** Trial testimony from February 9, 2005 is designated as "Feb. 9 Tr."

Cheney referred Plaintiff for epidural steroid injections, the first of which was mildly successful and the second of which was moderately ineffective. *Id.* at 24–27, 156. After a September 8, 2000 visit to Dr. Cheney, Plaintiff was instructed to wear an LSO brace, a hard plastic brace that restricts motion, which also provided Plaintiff with little relief. *Id.* at 28. As a result of the conservative treatment's failure to provide significant pain relief, on November 9, 2000, Dr. Cheney recommended that Plaintiff undergo a spinal fusion at the L4–L5 level in order to stabilize the spine. *Id.* at 31, 158. Plaintiff underwent a laminectomy and a spinal fusion on March 28, 2001. *Id.* at 36–38. Plaintiff spent four or five days in the hospital and was required to wear an LSO brace until June 28, 2001, a period of three months after undergoing surgery. *Id.* at 47–48. After his surgery, Plaintiff was required to have a seroma, a collection of fluid, drained on two occasions. *Id.* at 46–47.

Plaintiff resumed physical therapy and returned to work for Defendant on a light-duty basis in July 2001 with limited four hour shifts and limited lifting, bending and twisting. *Id.* at 54, 159. On September 7, 2001, Plaintiff indicated to Dr. Cheney that he was experiencing a fair amount of discomfort in his back. *Id.* at 55. By November 2001, Plaintiff had resumed full time work, although as a conductor instead of his prior work as an engineer. *Id.* at 161. In December 2001, Plaintiff again complained about a backache when he was up and standing for long periods of time. *Id.* at 58. In February 2002, Plaintiff was forced to stop working because of significant pain in his lower back. *Id.* at 60, 162.

Plaintiff then discussed other job possibilities with Dr. Cheney, Gary Baker, a representative of Defendant, and Scott Mitchell, Defendant's vocational rehabilitation manager. *Id.* at 164–65. In May 2002, Plaintiff submitted an application for a yardmaster position with Defendant, but was not selected for this position. *Id.* at 165–66. During the summer of 2002, with the support of Defendant, Plaintiff chose to return to the College of St. Rose to obtain his teaching certification. *Id.* at 166–67. Plaintiff completed his teaching certification and obtained employment at the Bethlehem High School beginning in February 2003. *Id.* In June 2004, Plaintiff's contract with the school was not renewed and Plaintiff continues to attempt to find a full-time teaching position. *Id.* at 168. Plaintiff currently works as a substitute teacher and is enrolled at the College of St. Rose in order to obtain a master's degree in educational psychology. *Id.* at 169.

Defendant conceded liability and a jury trial on the issue of damages was held beginning on February 7, 2005 before this Court. On February 10, 2005, a jury verdict was returned in favor of Ahlf awarding total damages in the amount of $2,221,000. The jury awarded $1,000,000 for past pain and suffering, $750,000 for future pain and suffering, $176,000 for past loss of earnings, $295,000 for future loss of earnings, and attributed five percent of those damages to Plaintiff's pre-existing condition, resulting in an award of $2,109,950. Verdict Form (Dkt. No. 38).

Defendant asserts three grounds for either a new trial or remittitur. First, Defendant contends that the jury's award of $1,750,000 for past and future pain and suffering is excessive as a matter of law and not rationally based on the evidence. Def. Memo. (Dkt. No. 42) at 2. Second, Defendant states that the jury's apportionment of five percent of the damages to Plaintiff's pre-existing condition is against the weight of the evidence. *Id.* at 7. Third, Defendant argues that the Court failed to instruct the jury on Plaintiff's duty to mitigate his damages. *Id.* at 9.

Defendant also moves for a stay of execution to enforce the judgment pending disposition of this motion pursuant to Federal Rule of Civil Procedure 62(b).[3] *Id.* at 10.

## II. DISCUSSION

██ Federal Rule of Civil Procedure 59(a) provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. P. 59(a). A new trial may be granted pursuant to Rule 59, when "the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice". *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir.1988)); *see also Bean v. CSX Transp.*, 289 F.Supp.2d 277, 280 (N.D.N.Y. 2003) (Homer, M.J.).

### A. Excessiveness of the Verdict

Defendant contends that the jury's damage award for past and future pain and suffering is excessive as a matter of law and Defendant is therefore entitled to a new trial or remittitur of these damages. Def. Memo. (Dkt. No. 42) at 2.

██ "If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Casey v. Long Island R.R. Co.*, 2004 WL 1609330, at *4, 2004 U.S. Dist. LEXIS 13425, at *10 (S.D.N.Y. July 16, 2004) (citing *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995)). "Remittitur is 'the process by

which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial.'" *Bean*, 289 F.Supp.2d at 283 (quoting *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir.1990)). The standard for a new trial and remittitur are the same. *See Slade v. Whitco Corp.*, 811 F.Supp. 71, 76–77 (N.D.N.Y.1993) (Hurd, J.).

██ "A jury verdict is not, certainly, something lightly to be set aside." *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 566 (2d Cir.1988). "A verdict is so high as to be excessive ... only if it surpasses an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable persons may differ, but a question of law." *Mazyck v. Long Island R.R. Co.*, 896 F.Supp. 1330, 1336 (E.D.N.Y.1995) (quoting *Dagnello v. Long Island R.R.*, 289 F.2d 797, 806 (2d Cir.1961)) (internal quotations omitted). "The upper limit is surpassed when the verdict 'shocks the judicial conscience,' and therefore exceeds what a reasonable jury could have returned for the plaintiff if it followed the Court's instructions." *Id.* at 1336–37 (citing *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir.1993)); *see also Nairn*, 837 F.2d at 566 ("[W]e may order a new trial only when the verdict is irrational or so high as to shock the judicial conscience ...") (quoting *Batchkowsky v. Penn. Cent. Co.*, 525 F.2d 1121, 1124 (2d Cir.1975)). Because there is no precise way in which to calculate damages for pain and suffering, the jury's award should not be disturbed unless "the quantum of damages found by a jury is clearly outside the maximum limit of a reasonable range." *Paper Corp. v. Schoeller Technical Papers, Inc.*, 807 F.Supp. 337, 350 (S.D.N.Y.1992).

---

**3.** With the filing of this decision, CSX's request for a stay of enforcement becomes moot and is, therefore, denied.

The analysis of a jury award is necessarily informed by the particular facts of each case. *See Scala*, 985 F.2d at 684. "Viewing the evidence pertaining to pain and suffering in the light most favorable to the plaintiff", *Mazyck*, 896 F.Supp. at 1336 (citing *Batchkowsky*, 525 F.2d at 1125); *Scala*, 985 F.2d at 683, the Court's review of the evidence shows that the Plaintiff has experienced significant pain over the past five years and will continue to suffer at least moderate pain and disability over his life expectancy of thirty years and is more prone to additional injury and pain as a result of the accident and his spinal fusion surgery.

After the accident on December 5, 1999, Plaintiff complained of back and shoulder pain. Feb. 8 Tr. at 150. When physical therapy and medication failed to ease the pain Plaintiff was experiencing, epidural steroid injections were administered and Plaintiff wore a rigid brace to stabilize his back. *Id.* at 24–27, 156. The injections and brace also failed to relief the symptoms of pain and discomfort plaguing Plaintiff and as a result, Plaintiff underwent major back surgery performed by Dr. Cheney on March 28, 2001, consisting of a L4–L5 posterior lumbar fusion with application of carbon fiber cages and ileac crest bone grafting. *Id.* at 35–43. Even after surgery, Plaintiff reported to Dr. Cheney that he was experiencing significant pain and discomfort in his lower back, which progressed to the point where in February 2002, he could no longer work as a conductor for Defendant. *Id.* at 55, 58, 60, 162. In addition to affecting Plaintiff's career, he testified that the pain has diminished his quality of life, preventing him from maintaining his property and engaging in hobbies such as boating and hunting. *Id.* at 173. Plaintiff testified that he continues to feel some pain and discomfort which he describes as a "dull aching pain", which at times becomes a "throbbing nerve pain" that feels like being stuck with a "sharp pin". *Id.* at 174.

Defendant's own physician, Dr. James Nelson ("Dr.Nelson"), stated that Plaintiff has limited back motion, experiences significant pain that limits him when he bends forward, and that Plaintiff was fifty percent limited when bending to the right and left. Feb. 9 Tr. at 158. Both Dr. Cheney and Dr. Nelson testified that Plaintiff will have some degree of discomfort for the rest of his life, that over time, there is a greater chance that he will have more difficulty with his back, and that the Plaintiff is now more susceptible and prone to injury since his spinal fusion. Feb. 8 Tr. at 67–68, 71–72; Feb. 9 Tr. at 174–77.

Dr. Cheney testified that Plaintiff will continue to have limitations in lifting, bending, and twisting and the risk of a future operation as a result of wearing of adjacent verteabra. Feb. 8 Tr. at 71–72. Dr. Cheney also testified that the need for surgery, physical therapy, and a change in occupation was all causally related to the accident of Dec. 5, 1999. *Id.*

"In order to determine whether a particular award is excessive, courts have found it useful to review awards in other cases involving similar injuries, while bearing in mind that any given judgment depends on a unique set of facts and circumstances." *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 568 (2d Cir.1988); *see also Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 684 (2d Cir.1993). Such cases need not come from this circuit. *See Dilger v. Consol. Rail Corp.*, 133 F.3d 906, 1997 WL 829251, at *2 (2d Cir.1997); *Frazier v. Norfolk & W. Ry. Co.*, 996 F.2d 922, 926 (7th Cir.1993).

■ Defendant cites cases in which plaintiffs were awarded lesser amounts for injuries which Defendant argues are comparable to, or arguably worse than, those in this case. For example, Defendant cites

*Schneider v. Nat'l R.R. Passenger Corp.*, 987 F.2d 132 (2d Cir.1993), in which the Second Circuit upheld an award of $1,000,000 for pain and suffering where the plaintiff was brutally beaten, the victim of an attempted rape, underwent three surgeries, and was left with severe physical and mental disabilities. *Id.* at 134. Similarly, Defendant cites *Bean v. CSX Trans., Inc.*, 289 F.Supp.2d 277 (N.D.N.Y.2003) (Homer, M.J.), where the court upheld a $1,100,000 award for pain and suffering to an injured railroad employee who had a similar spinal fusion to the surgery in the present case and continued "to experience pain, likely faces further surgery in the next two years to remove an additional disc, and he is totally disabled from further employment." *Id.* at 284. Lastly, Defendant points to *Dilger v. Consol. Rail Corp.*, 133 F.3d 906 (2d Cir.1997), where the Second Circuit upheld an award of $675,000 for pain and suffering in a wrongful death action brought under FELA. *Id.* at 133 F.3d 906, 1997 WL 829251, *7. Testimony in *Dilger* showed that the deceased had "every one of his ribs fractured; bone splinters from these fractures had punctured his lungs and caused them to gradually fill with blood; and that he had a fractured sternum, a fractured ankle, and a lacerated spleen." *Id.* at 133 F.3d 906, 1997 WL 829251, *1. Yet, this argument is not persuasive. "In order to prevail, ... the Railroad must do more than simply establish that some plaintiffs with similar injuries were awarded smaller verdicts, it must show that the jury's verdict in this case is clearly outside the maximum limit of a reasonable range." *D'Amato v. Long Island R.R. Co.*, 874 F.Supp. 57, 59 (E.D.N.Y.1995). Significantly, none of these courts held that the jury's verdict was the maximum amount allowable for the plaintiff's pain and suffering. These cases are not dispositive of what constitutes a reasonable jury award for past and future pain and suffering for Plaintiff's injuries.

In fact, the court in *Bean*, a factually similar case decided in the Northern District of New York, stated that "[a] survey of such similar cases reveals that awards for pain and suffering for severe back injuries as high as $3,000,000 have been sustained in federal and state courts under both the 'shock the conscience' standard or under the less deferential state law standard." *Bean*, 289 F.Supp.2d at 285 (citing *Frazier*, 996 F.2d at 925–26 (upholding award of $1,000,000 for past and future pain and suffering where plaintiff's injury resulted in surgery to remove two discs and chronic pain); *Barrowman v. Niagara Mohawk Power Corp.*, 252 A.D.2d 946, 675 N.Y.S.2d 734 (4th Dep't 1998) (upholding a $3,000,000 award to a plaintiff with herniated and ruptured discs from a fall at work leaving him with back and neck pain); *Poole v. Consolidated Rail*, 242 A.D.2d 966, 662 N.Y.S.2d 905 (4th Dep't 1997) (upholding an award of $2,000,000 to decedent who fell from a ladder and sustained a herniated disk, nerve root compression, radiculopathy and sexual impotence); *Walsh v. State*, 232 A.D.2d 939, 648 N.Y.S.2d 816 (3d Dep't 1996) (upholding an award of $1,750,000 to an electrician who fell while working and suffered permanent nerve damage and significant loss of function in his back and lower extremities, limb disfigurement and ongoing pain)). *See also Lewis v. Illinois Cent. R.R.*, 234 Ill. App.3d 669, 175 Ill.Dec. 573, 600 N.E.2d 504, 507 (1992) (upholding award of $3,935,350 to plaintiff for disability and disfigurement, pain and suffering, medical care and lost earnings as a result of a back injury that required a laminectomy and for steel plates to be inserted in plaintiff's spine); *Kirschhoffer v. Van Dyke*, 173 A.D.2d 7, 11, 577 N.Y.S.2d 512 (3d Dep't 1991) (reducing a verdict of $7,000,000 to $1,500,000 for future pain and suffering,

where the plaintiff sustained a back injury and underwent spinal fusion surgery); *Pace v. Nat'l R.R. Passenger Corp.*, 291 F.Supp.2d 93, 104 (D.Conn.2003) (upholding a jury verdict of $1,200,000 for future pain, suffering, mental anguish, and loss of enjoyment of life's activities where the plaintiff suffered two herniated disks and required surgery).

Defendant also cites *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565 (2d Cir. 1988), where the Second Circuit held that a $765,000 verdict for a plaintiff who suffered a back injury resulting in a fifteen percent impairment shocks the judicial conscience. *Id.* at 569. *Nairn*, however, is readily distinguishable. The plaintiff in *Nairn* had suffered a lumbosacral strain which produced a certain degree of disc degeneration, and as the court emphasized, "other than his initial visit to the emergency room, he had never been hospitalized or required surgery." *Nairn* 837 F.2d at 567. In the present case, Ahlf's injuries and the required surgery were far more significant than those suffered in *Nairn.*

Lastly, Defendant relies on *Casey v. Long Island R.R. Co.*, 2004 WL 1609330, 2004 U.S. Dist. LEXIS 13425 (S.D.N.Y. July 16, 2004), in which the plaintiff sustained a herniated disk and underwent surgery placing four screws and two rods in his back. *Id.* at 2004 WL 1609330, *1–2, 2004 U.S. Dist. LEXIS 13425, *4. The court held that a $350,000 award for past pain and suffering was not excessive, but that a $1,300,000 award for future pain and suffering was excessive. *Id.* at 2004 WL 1609330, *6, 2004 U.S. Dist. LEXIS 13425, *18. In distinguishing both *Pace* and *Frazier*, the *Casey* court focused on the fact that the plaintiff's physical pain had substantially lessened since the surgery, that the plaintiff testified he no longer felt pain as a result of his back injury, and that no evidence suggested the likelihood of increased pain in the future. *Id.* at 2004

WL 1609330, *5–6, 2004 U.S. Dist. LEXIS 13425, *15–16. In the present case, similar to both *Pace* and *Frazier*, the evidence suggests that even after surgery, Ahlf suffered from significant aggravation and pain, to the point which he was forced to stop working for Defendant in February 2002. Feb. 8 Tr. at 90, 162. Ahlf testified that he presently feels pain, which he describes as a "throbbing nerve pain" that feels like a "sharp pin". *Id.* at 174. Dr. Cheney and Dr. Nelson testified that Plaintiff will have some degree of discomfort for his entire life and that he is more susceptible to further injury because of his rigid spine. *Id.* at 59–61, 71–72; Feb. 9 Tr. at 177–78. As a result, the Court finds that the comparisons to both *Pace* and *Frazier* are more apt than to *Casey.*

■ The Court's review of similar cases reveal that the jury's award of $1,000,000 for five years of past pain and suffering and $750,000 for thirty years of future pain and suffering for a severe back injury and major surgery falls within the reasonable range of verdicts. For all these reasons, Defendant has failed to meet its substantial burden that this jury's award of $1,750,000 for past and future pain and suffering is "clearly outside the maximum limit of a reasonable range." *D'Amato v. Long Island R.R. Co.*, 874 F.Supp. 57, 59 (E.D.N.Y.1995). Therefore, Defendant's motion for a new trial or remittitur on the ground that the jury award for past and future pain and suffering is excessive as a matter of law is denied.

### B. Plaintiff's Pre–Existing Condition

Defendant also contends that the jury's five percent apportionment of damage to Plaintiff's pre-existing condition was against the weight of the evidence. Def. Memo. (Dkt. No. 42) at 7.

"[T]he power of the district court to grant a new trial based on the weight of the evidence [is] one that could properly be exercised only if the court viewed the jury's verdict as seriously erroneous." *Piesco v. Koch,* 12 F.3d 332, 344 (2d Cir. 1993); *see also Paper Corp. v. Schoeller Technical Papers, Inc.,* 807 F.Supp. 337, 348 (S.D.N.Y.1992).

■ Defendant has the burden of proving that Plaintiff had a pre-existing condition. *See Maurer v. United States,* 668 F.2d 98, 100 (2d Cir.1981) ("The burden of proof ... is upon the defendant to prove the extent of the damages that the preexisting condition would inevitably have caused."); *Stevens v. Bangor & Aroostook R.R. Co.,* 97 F.3d 594, 603 (1st Cir.1996). As a result, if the jury was unable to separate the pain and disability caused by the pre-existing condition, then the jury should be instructed to hold Defendant liable for all of Plaintiff's injuries. Such an instruction was given in the present case. *Stevens,* 97 F.3d at 603.

■ In supporting its position, Defendant states that Plaintiff had a significant pre-existing back problem and highlights statements by Plaintiff's own treating physician, Dr. Cheney, that diagnosed Plaintiff with a disc herniation, that Plaintiff sought treatment from a chiropractor on thirty-six occasions between 1996 and 1999, and Dr. Nelson's opinion that twenty-five percent of Plaintiff's injury was attributable to his pre-existing condition. Def. Memo. (Dkt. No. 42) at 8.

However, Defendant has offered no evidence that Plaintiff had a pre-existing disk herniation. Rather, Defendant presented evidence that Plaintiff had minor pre-existing joint pain for which he underwent occasional chiropractic care. Dr. Robert Golden, Plaintiff's chiropractor before the accident, testified that he never treated Plaintiff for a herniated disk, but rather, treated Plaintiff for problems with his joint alignment. Feb. 9 Tr. at 140. Both Dr. Cheney and Dr. Nelson testified at trial that Plaintiff's disk herniation was causally related to the December 5, 1999 collision. Feb. 8 Tr. at 73; Feb. 9 Tr. at 175. Dr. Nelson also testified that it was his opinion that the spinal fusion surgery was necessary because of the disk herniation that occurred at L4–L5. Feb. 9 Tr. at 175.

Defendant's assertion that because Dr. Nelson testified that twenty-five percent of Plaintiff's damages were attributable to his pre-existing condition, the jury's verdict is against the weight of the evidence is without merit. Dr. Nelson himself stated that "assigning a percentage from one causative factor to the other is, by nature ... arbitrary." Feb. 9 Tr. at 163.

A review of the testimony and evidence at trial and Defendant's proof in support of its motion reveals that the jury's verdict is within the realm of reasonableness and does not approach the threshold of being the sort of "seriously erroneous result" that would constitute a miscarriage of justice and necessitate a new trial. Therefore, Defendant's motion for a new trial or remittitur on the ground that the jury's apportionment of damages to Plaintiff's pre-existing condition was against the weight of the evidence is denied.

### C. Jury Charge of Plaintiff's Duty to Reasonably Mitigate His Damages

Defendant next contends that the Court refused Defendant's request to charge the jury on the issue of Plaintiff's duty to mitigate his damages, and therefore Defendant is entitled to a new trial. Def. Memo. (Dkt. No. 42) at 9.

Defendant states that Plaintiff has an associate's degree in electrical engineering from Alfred State University, a bachelor's degree in electrical engineering from Rochester Institute of Technology, and

twelve years work experience in the electrical engineering field. *Id.;* Feb. 8 Tr. at 130. Defendant argues that Plaintiff could have returned to gainful employment with earnings exceeding those of his railroad employment by being employed as an electrical engineer, and that by returning to school and obtaining employment as a teacher does not, as a matter of law, satisfy Plaintiff's duty to mitigate his damages. Def. Reply (Dkt. No. 49) at 8. Defendant claims that it was therefore a question for the jury to determine whether Plaintiff had, in fact, reasonably mitigated his damages in light of his education, experience, and physical ability. Def. Memo. (Dkt. No. 42) at 9.

As stated by Defendant, under FELA, Plaintiff has a duty to reasonably mitigate his damages. *See Wilson v. Union Pacific R.R. Co.,* 56 F.3d 1226, 1232 (10th Cir.1995). However, it is Defendant's burden to prove that Plaintiff has failed to reasonably mitigate his damages. *See Jones v. Consol. Rail Corp.,* 800 F.2d 590, 593 (6th Cir.1986); *Schneider v. Nat'l R.R. Passenger Corp.,* 987 F.2d 132, 136 (2d Cir.1993). "[I]t is error . . . to instruct the jury on an issue when there has been insufficient evidence presented to support a jury finding on that issue." *Jones,* 800 F.2d at 592. A showing that Plaintiff failed to seek employment "does not alone suffice to justify a mitigation instruction; the defendant must also show that appropriate jobs were available." *Wilson,* 56 F.3d at 1232.

This Court's refusal to instruct the jury on mitigation does not entitle Defendant to a new trial. After the accident, Plaintiff attempted to return to work with Defendant, but, because of continuing pain, Plaintiff was forced to stop his work as a conductor in February 2002. Feb. 8 Tr. at 162. In the spring and summer of 2002, Plaintiff and Scott Marshall, Defendant's vocational rehabilitation manager, discussed numerous options including Plaintiff attempting to return to his previous career as an electrical engineer, returning to school for additional training, and completing his Masters of Business Administration. *Id.* at 164–65; Feb. 9 Tr. at 117. Plaintiff expressed interest in staying employed with Defendant in another capacity and applied for the only job opening about which Marshall notified Plaintiff, a yardmaster position, and after not being offered that job, Plaintiff returned to school for retraining and undertook a full-time teaching position which was compatible with Plaintiff's physical restrictions. Feb. 8 Tr. at 165–67; Feb. 9 Tr. at 117–19. Marshall and Defendant assisted Plaintiff's transition to the teaching profession and Defendant paid for Plaintiff's tuition, books, and purchased a laptop for Plaintiff's studies. Feb. 9 Tr. at 119–20. Marshall testified that in his opinion, Plaintiff had successfully completed Defendant's vocational rehabilitation program, in that Plaintiff had retrained and obtained alternative employment. Feb. 9 Tr. at 123.

At trial, Defendant offered no evidence that Plaintiff turned down a position offered by Defendant or otherwise failed to act reasonably in his attempt to obtain gainful employment. Defendant's contention that Plaintiff might have received a greater income by returning to his prior employment as an electrical engineer does not meet Defendant's burden. Plaintiff testified that he was physically incapable of performing his past employment as an electrical engineer. Feb. 8 Tr. at 200. Defendant did not challenge Plaintiff's stated incapacity to return to a position as an electrical engineer and otherwise failed to show that any such jobs were available to Plaintiff.

Because the Defendant failed to meet its burden of proving that Plaintiff did not

reasonably mitigate his damages, the Court did not err in declining to instruct the jury on the issue of mitigation. Thus, Defendant is not entitled to a new trial and Defendant's motion is denied in this regard.

## III.  CONCLUSION

Accordingly, it is hereby

ORDERED that Defendant's motion for a new trial or remittitur is DENIED; and it is further

ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.