■ SAGER SPUCK STATEWIDE SUPPLY COMPANY, INC., Respondent, v ERNEST L. MEYER et al., Appellants. [710 NYS2d 429] —Spain, J. Appeal from an order of the Supreme Court (Malone, Jr., J.), entered May 17, 1999 in Albany County, which granted plaintiff's motion for partial summary judgment and permanently enjoined defendants from competing with plaintiff.

In January 1990 defendant Ernest L. Meyer sold his 84.7% interest in Statewide Industrial Equipment Company to plaintiff's president, who also acquired the remaining shares of Statewide. As a result of its subsequent merger with Statewide, plaintiff succeeded to Statewide's rights under an agreement not to compete executed by Meyer in connection with the sale of his interest in Statewide. Meyer subsequently became a full-time consultant for plaintiff and, by agreement dated July 6, 1994, Meyer agreed to accept 1,365 shares of preferred stock in plaintiff in exchange for the cancellation of outstanding debt owed to him by plaintiff and its president. The canceled debt included the remaining balance of more than $191,000 owed to Meyer pursuant to the agreement not to compete. Meyer resigned his position with plaintiff in May 1996 and began working as a salesperson for Midway Industrial Supply, Inc., a competitor of plaintiff.

Defendant David W. Bender began working for plaintiff in 1988 and subsequently became its vice-president for sales and marketing. In May 1992 Bender purchased three shares of common stock in plaintiff pursuant to an agreement which provided that the shares would be redeemed within 30 days after Bender left plaintiff's employ, with the redemption price to be based on the book value of the corporation. According to plaintiff's president, Bender was also elected as a director of plaintiff. Bender resigned his position as vice-president in May 1996 and began working as Midway's Albany branch manager.

As a result of defendants' conduct in engaging in a business which competes with plaintiff, plaintiff commenced this action for monetary and injunctive relief. Plaintiff's complaint includes claims that Meyer breached the agreement not to compete, breached the implied covenant not to impair the goodwill of the business he sold and breached his fiduciary duty as a shareholder of plaintiff. With regard to Bender, plaintiff's complaint includes a claim that Bender breached his fiduciary duty as a shareholder and director of plaintiff. After joinder of issue and discovery, plaintiff moved for partial summary judgment on the issue of liability and its entitlement to injunctive relief on these claims and for judgment on its accounting cause of action. Supreme Court granted the motion and defendants appeal.

The issues regarding plaintiff's entitlement to the injunctive relief awarded by Supreme Court are moot. The permanent injunction against Meyer was to run for a period of 10 years from the date of the signing of the agreement not to compete and this 10-year period expired in January 2000. The permanent injunction against Bender was to continue as long as he had a proprietary ownership interest in plaintiff and plaintiff concedes in its brief that Bender surrendered his shares to plaintiff in September 1999. Inasmuch as the injunctive relief awarded by Supreme Court has expired, defendants are no longer aggrieved and we see no reason to reach the merits of defendants' challenge to that relief (see, *H. Meer Dental Supply Co. v Commisso*, 269 AD2d 662). Nevertheless, plaintiff also seeks monetary relief with regard to the claims on which it was awarded partial summary judgment and, therefore, we must determine whether the record establishes defendants' liability as a matter of law on these claims.

In contrast to *Cliff v R. R.S. Inc.* (207 AD2d 17), upon which Meyer relies, the agreement not to compete executed by Meyer falls squarely within the category of a covenant not to compete arising out of the express agreement of the seller of a business to refrain from competing with the purchaser, which will be enforced if reasonable in geographic scope and duration (see, *id.*, at 19). It must not be "more extensive, in terms of time and space, than is reasonably necessary to the buyer for the protection of his legitimate interest in the enjoyment of the asset bought" (*Purchasing Assocs. v Weitz*, 13 NY2d 267, 271-272). Meyer's agreement contains a 10-year time limit and a geographical limitation to New York and nearby states.

In opposition to plaintiff's motion, Meyer did not challenge the reasonableness of the duration and geographic scope of the agreement not to compete and, therefore, that issue has not been preserved for our review (see, *Sam v Town of Rotterdam*, 248 AD2d 850, *lv denied* 92 NY2d 804). He argued instead that the July 1994 agreement released him from the restraint of the agreement not to compete and that the agreement not to compete was unenforceable because it did not seek to protect any confidential information. The latter claim is relevant only in the case of a covenant not to compete arising out of an employment contract (see, *Cliff v R. R.S. Inc.*, *supra*, at 19), which is not the case here. With regard to the effect of the July 1994 agreement, it contains nothing which even remotely suggests the release or cancellation of Meyer's obligation under the agreement not to compete. The July 1994 agreement expressly provides that it contains "the entire understanding

of the parties and merges all prior and simultaneous under-standings." Accordingly, in the absence of any ambiguity, Meyer's claim that the parties intended that the July 1994 agreement supercede the agreement not to compete is insufficient to raise a question of fact (see, *Bruni v County of Otsego*, 192 AD2d 939, 941-942). The agreement not to compete was, therefore, enforceable and Meyer, by his own admission, concedes that he solicited plaintiff's customers after he ceased working for plaintiff. Accordingly, there is no basis to disturb the award of partial summary judgment to plaintiff on the issue of Meyer's liability on this claim. The extent of that breach prior to the expiration of the agreement is a matter relevant to the unresolved issue of damages.

With regard to plaintiff's claim based upon the implied covenant not to impair the good will of the business, Meyer argues that the implied covenant is an equitable doctrine and that Supreme Court ignored factors which, as a matter of equity, weigh in Meyer's favor in determining whether he should be liable for breaching the implied covenant. In particular, Meyer contends that as a result of plaintiff's dire financial condition in July 1994, he agreed to cancel the debt owed to him by plaintiff and its president in exchange for preferred stock worth less than half the debt. However, Meyer was aware of the value of the stock and, as part of the July 1994 agreement, he could have negotiated a release of the implied covenant.

In any event, there is no merit to Meyer's claim that the implied covenant not to impair the good will of the business is an equitable doctrine. The implied covenant, which is narrower than an express covenant and restricts the seller's economic freedom only to the extent that it precludes the seller from soliciting former customers, is a duty "imposed by law in order to prevent the seller from taking back that which he has purported to sell" (*Mohawk Maintenance Co. v Kessler*, 52 NY2d 276, 285); it gives the purchaser "a vested property right of indefinite duration" (*id.*, at 286). Meyer concedes that he solicited two former customers and, therefore, partial summary judgment was properly granted to plaintiff on the issue of Meyer's liability on this claim. The question of whether Meyer also solicited other former customers is a matter to be resolved on the issue of damages.

With regard to plaintiff's breach of fiduciary duty claims, "no trust relation ordinarily exists between the stockholders themselves or between the stockholders and the corporation, because the stockholders ordinarily are strangers to the management and control of the corporation business and af-

fairs" (*Kavanaugh v Kavanaugh Knitting Co.*, 226 NY 185, 194). On the other hand, "[d]irectors of a corporation and in some cases stockholders who dominate and control a corporation, occupy a position of 'partial trust' * * * and they may be held accountable in equity for detriment to the corporation caused by their breach of the fiduciary obligation arising from that relationship" (*Equity Corp. v Groves*, 294 NY 8, 12 [citation omitted], *see, Alpert v 28 Williams St. Corp.*, 63 NY2d 557, 568-569). Courts have also recognized the existence of a fiduciary duty between the shareholders of a close corporation (*see, e.g., Cassata v Brewster-Allen-Wichert, Inc.*, 248 AD2d 710), a duty based upon the theory that the relationship between such shareholders is akin to that between partners (*see, Fender v Prescott*, 101 AD2d 418, 422, *affd* 64 NY2d 1077).

Based upon the foregoing principles, we conclude that Meyer's ownership of preferred stock in plaintiff did not give rise to a fiduciary duty owed to plaintiff. Meyer acquired the stock at plaintiff's request to accommodate plaintiff in its efforts to cope with its deteriorating financial condition. The stock gave Meyer no voting rights and there is no evidence that he participated in the management and control of the corporation or that his relationship with the holders of plaintiff's common stock was akin to that between partners. Accordingly, Supreme Court erred in granting partial summary judgment to plaintiff on the issue of Meyer's liability on this claim.

Plaintiff's breach of fiduciary duty claim against Bender is based on his status as a shareholder and director of plaintiff. With regard to his shareholder status, Bender owned three shares or 2.75% of plaintiff's common stock at the time he resigned his position with plaintiff and his answer includes a counterclaim alleging that plaintiff breached the redemption agreement by tendering a mere $13.53 for the shares purchased by Bender for more than $47,000. The counterclaim remains unresolved and if Bender prevails, his continuing status as a shareholder after leaving his employment with plaintiff and prior to his surrender of the shares will be directly attributable to plaintiff's breach of the redemption agreement.

In addition, while there is evidence that Bender was elected as a director in 1992 or 1994, he does not recall having been elected and does not recall being notified of any meetings of the directors or shareholders. Other evidence in the record raises questions of fact as to whether his status as a director continued after 1994 and was anything other than a mere formality. Indeed, the record raises a question of fact as to whether the business was actually conducted by plaintiff's pres-

ident as a sole proprietorship, with no regard for plaintiff's corporate status or the requirements of plaintiff's bylaws, in which event the corporate fiduciary standards would be inapplicable (cf., Wolff v Wolff, 67 NY2d 638, 641). In these circumstances, plaintiff was not entitled to partial summary judgment against Bender on the breach of fiduciary duty and accounting causes of action.

Mercure, J. P., Peters, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion for partial summary judgment on the issue of defendants' liability on the breach of fiduciary duty cause of action and for summary judgment on the accounting cause of action against defendant David W. Bender; motion denied to that extent; and, as so modified, affirmed.