■ Dominic P. Carota, Appellant, v Amy Wu et al., Respondents. [725 NYS2d 453] —Peters, J. Appeals (1) from an order of the Supreme Court (Malone, Jr., J.), entered February 29, 2000 in Albany County, which granted defendants' motions for summary judgment dismissing the complaint, and (2) from an order of said court, entered May 15, 2000 in Albany County, which denied plaintiff's motion for reconsideration.

As a result of a multicar collision on August 8, 1997, plaintiff commenced this personal injury action seeking compensation for his injuries. Upon completion of discovery, defendants moved for summary judgment seeking dismissal of the complaint contending, *inter alia*, that plaintiff did not sustain a "serious injury" within the meaning of Insurance Law § 5102 (d).* Supreme Court granted the relief and subsequently denied plaintiff's request to renew and/or reargue the determination based upon an additional medical report of his treating physician. Plaintiff appeals from both orders.

As here relevant, plaintiff contends that the injuries he sustained to his neck constitute a permanent loss of use and/or a permanent consequential or significant limitation thereof or an impairment which prevented him from performing substantially all of his daily activities for at least 90 of the 180 days following his injury (*see*, Insurance Law § 5102 [d]). Defendants,

---

* Defendants Amy Wu and Susan Wu moved for summary judgment prompting defendants Charles Simmons and Margaret Simmons to cross-move for the same relief. Plaintiff opposed both motions.

as movants, relied upon both plaintiff's pretrial testimony describing the minimal effect that the accident had on his work schedule, exercise regimen or daily routine, as well as a report by Cyril Shea, an orthopedic surgeon. After conducting an independent medical examination of plaintiff and reviewing all of his medical records, physical therapy notes, X rays of the cervical spine and relevant pleadings, Shea concluded that there were no objective signs of an impairment related to the subject accident, instead noting only a continued limitation of cervical motion which he viewed as disproportionate to the injury sustained. Acknowledging abnormality of the C5 vertebrae, he opined that it was developmental in origin.

With such proffer sufficient (*see, Barbagallo v Quackenbush*, 271 AD2d 724, 725; *Wiley v Bednar*, 261 AD2d 679, 680), "the burden * * * shifted to plaintiff to submit competent medical evidence based upon objective medical findings and diagnostic tests to raise an issue of fact" (*Barbagallo v Quackenbush, supra*, at 725; *see, Rath v Shafer*, 267 AD2d 565). Plaintiff's showing was comprised of an affidavit by his osteopath and roommate, Stephen Sipperly, who treated him on the date of the accident and referred him to John Whalen, an orthopedic surgeon. Plaintiff did not treat with Sipperly again until November 30, 1999, 20 months after plaintiff's last visit with Whalen. Sipperly opined that plaintiff's neck revealed cervical muscle spasms which radiated into the occipital area down to the shoulder and were tender to the touch. He further noted "several trigger points in the left side, which are very sensitive." His diagnosis was a cervical, thoracic and lumbar spasm-strain secondary to the motor vehicle accident. At his second examination of plaintiff, Sipperly noted that plaintiff's neck was painful and tender to palpation over the vertebrae at the C4-C5 level with markedly diminished range of normal neck extension. Finding "observations of objective signs documenting [plaintiff's] complaints of pain, including paravertelral [*sic*] muscle spasms, and multiple trigger points observable on palpation," he diagnosed plaintiff with an aggravation of a preexisting compression fracture of his C5 vertebrae and found such injury to be permanent and causally related to the subject motor vehicle accident.

Plaintiff treated with Whalen on six separate occasions. Whalen's diagnosis of cervical and lumbar sprain was made after his review of X rays completed on August 27, 1997, along with his physical examination of plaintiff on September 2, 1997. Whalen noted, however, that the X rays indicated a preexisting compression deformity at C5 with no other significant abnor-

malities or other objective injuries. The initial cervical spine radiographs performed in Whalen's office, as well as all subsequent radiographs, confirmed this assessment. On the October 21, 1997 visit, Whalen reviewed the report of an MRI completed on October 7, 1997 which failed to reveal a fracture, herniated disc or spiral stenosis; a bone scan performed on the same date confirmed no fracture of the cervical spine. Returning to Whalen on December 9, 1997 with fairly good cervical range of motion, plaintiff was assessed with continued pain and cervical sprain. Whalen reported that the increased flexion at C4-C5 was due to the compression deformity of the vertebrae "which was old and did not light up on the bone scan." At plaintiff's last office visit on February 19, 1998, Whalen noted that plaintiff's flexion was improved and, although he assessed plaintiff with continued pain and cervical sprain, he did not suggest surgery. Plaintiff did not treat with another medical provider until he returned to Sipperly in November 1999, but did attend approximately 15 sessions of physical therapy as prescribed by Whalen.

In our view, plaintiff's proffer fails to demonstrate the requisite objective medical evidence which must accompany complaints of pain to defeat a motion for summary judgment (*see, Scheer v Koubek*, 70 NY2d 678, 679; *Uhl v Sofia*, 245 AD2d 988, 989). The limited range of motion of plaintiff's neck along with tenderness at the C4-C5 level is insufficient to support claims alleging a permanent loss of use and/or a permanent or significant limitation of use of his neck (*see, Rose v Furgerson*, 281 AD2d 857, 859; *Rath v Shafer*, 267 AD2d 565, 566-567, *supra*; *Wiley v Bednar*, 261 AD2d 679, 679-680, *supra*) without an articulated medical basis or the proffer of objective physical evidence such as swelling, numbness or a contributing preexisting condition that is more than minor. Sipperly's notation of spasms fails to correct this deficiency since he failed to identify the tests that he used in diagnosing plaintiff or the locations of the trigger points and spasms he observed (*see, Uhl v Sofia, supra*, at 990).

Nor do we find that plaintiff sustained his burden of demonstrating a triable issue that the injuries sustained as a result of the motor vehicle accident prevented him from performing his usual and customary daily activities for more than 90 days during the 180 days immediately following the accident. Plaintiff's deposition testimony detailed that he continued with his daily activities, including socializing, exercising at a gym twice a week, cleaning and working at his profession 40 hours a week, albeit all were done in a more careful manner.

With respect to the denial of plaintiff's motion to renew and/or reargue based upon an office note of Whalen concerning an examination that he performed on plaintiff after the return date of the prior motion, the determination rendered is not appealable (*see, Matter of Jones v Marcy*, 135 AD2d 887, 888) if the instant proffer was in support of a motion to reargue (*see, Foley v Roche*, 68 AD2d 558, 567). If deemed a motion to renew, it had to "be based upon newly discovered material facts or evidence which existed at the time the prior motion was made, but were unknown to the party * * * seeking renewal * * * [along with a] valid excuse * * * as to why the new information was not previously submitted" (*Matter of Jones v Marcy, supra*, at 888 [citation omitted]; *see, Rubinstein v Goldman*, 225 AD2d 328, *lv denied* 88 NY2d 815). In our view, the unsworn office notes of Whalen concerning this belated examination do not constitute "new evidence" which was not previously available. As renewal " 'is not a second chance freely given to parties who have not exercised due diligence in making their first factual presentation' " (*Rubinstein v Goldman, supra*, at 329, quoting *Matter of Beiny*, 132 AD2d 190, 210, *lv dismissed* 71 NY2d 994), the denial of the motion was proper.

Cardona, P.. J., Crew III, Spain and Lahtinen, JJ., concur. Ordered that the orders are affirmed, with costs to defendants Amy Wu and Susan Wu.