[886 NYS2d 769]

G<small>EORGE</small> B<small>ROWN</small> et al., Respondents, v R<small>EINAUER</small> T<small>RANSPORTA-</small>
<small>TION</small> C<small>OMPANIES</small>, LLC, et al., Appellants.

Third Department, September 10, 2009

---

**APPEARANCES OF COUNSEL**

*Kenny, Stearns & Zonghetti, L.L.C.*, New York City (*Joseph T. Stearns* of counsel), for appellants.

*Larkin, Axelrod, Ingrassia & Tetenbaum, L.L.P.*, Newburgh (*James Alexander Burke* of counsel), for respondents.

**OPINION OF THE COURT**

MERCURE, J.P.

In July 2003, plaintiff George Brown (hereinafter plaintiff) was injured, allegedly as a result of a fall from a ladder on a barge owned and operated by defendants, his employers. Plaintiff asserted that he fell 8 to 10 feet to the deck of the barge when an antenna pole that he was using as a handrail broke. At the time, plaintiff was attempting to descend from the barge's deckhouse roof, where he had been filling tanks that supplied fuel to discharge the barge's cargo. Plaintiff and his wife, derivatively, commenced this action under the Jones Act (46 USC § 30104 *et seq.*) and general maritime law, alleging that defendants were negligent in allowing unsafe conditions to exist on the barge and in failing to provide plaintiff with a safe place to work, that the barge was unseaworthy, and that plaintiff is entitled to maintenance and cure.

Following joinder of issue, plaintiffs moved for, among other things, preclusion of the testimony of defendants' medical expert and for partial summary judgment on liability under the Jones Act. Supreme Court (O'Connor, J.) granted both motions and denied defendants' subsequent motions for reargument of the order precluding their expert's testimony and for reargument and renewal of the order granting partial summary judgment. Thereafter, Supreme Court (Cahill, J.) held a trial on damages, at the close of which the jury rendered a verdict in plaintiffs' favor. Defendants appeal from the orders granting plaintiffs' motions to preclude expert trial testimony and for partial summary judgment on liability, as well as the orders denying their motions for reargument or renewal and the judgment in the amount of $5,299,210.21 entered upon the verdict in plaintiffs' favor.[1]

---

**1.** To the extent that defendants' motions for reargument or renewal can be deemed motions for reargument, no appeal lies from the denial of a motion to reargue (*see Mortgage Elec. Registration Sys., Inc. v Schuh*, 48 AD3d 838, 840 [2008], *appeal dismissed* 10 NY3d 951 [2008]; *Matter of King v Town Council of Coxsackie*, 35 AD3d 1120, 1120 [2006]). Insofar as the motions can be construed as seeking renewal, they were properly denied inasmuch as it is undisputed that the evidence that defendants presented in connection with the motions was not newly discovered evidence (*see Matter of King v Town Council of Coxsackie*, 35 AD3d at 1120; *Wahl v Grippen*, 305 AD2d 707, 707 [2003]; *Carota v Wu*, 284 AD2d 614, 617 [2001]). Our review of the order granting partial summary judgment and precluding the testimony of defendants' expert is therefore limited to the record upon which those decisions were made (*see Matter of Carriero v Town Bd. of Town of Stillwater*, 41 AD3d 1011, 1012 n [2007], *lv dismissed and denied* 9 NY3d 980 [2007], *lv dismissed* 12 NY3d 838 [2009]; *Matter of McKelvey v White*, 184 AD2d 834, 835 [1992]).

■ Initially, we reject defendants' argument that Supreme Court (O'Connor, J.) erred in granting plaintiffs' motion for partial summary judgment on liability under the Jones Act based upon negligence per se. "The Jones Act . . . provides seamen with special statutory protections in the area of personal injury suits[,] . . . plac[ing] a . . . duty on the [shipowner] to provide a reasonably safe workplace" (*Wills v Amerada Hess Corp.*, 379 F3d 32, 41-42 [2d Cir 2004], *cert denied* 546 US 822 [2005] [internal quotation marks and citations omitted]).[2] The Jones Act extends to seamen all rights afforded to railroad workers under the Federal Employers' Liability Act, "includ[ing] a bar against comparative negligence for violations of statutes enacted for the safety of employees" (*Jones v Spentonbush-Red Star Co.*, 155 F3d 587, 595 [2d Cir 1998]; *see* 46 USC § 30104; *Kernan v American Dredging Co.*, 355 US 426, 438-439 [1958]). The parties do not dispute that this bar against comparative negligence extends to instances involving the violation of a Coast Guard regulation (*see Fuszek v Royal King Fisheries, Inc.*, 98 F3d 514, 516-517 [9th Cir 1996], *cert denied* 520 US 1155 [1997]; *Johnson v Horizon Lines, LLC*, 520 F Supp 2d 524, 527 [2007]; *see also Jones v Spentonbush-Red Star Co.*, 155 F3d at 595); nor do they dispute that, in the context of the Jones Act, negligence per se may be demonstrated by a showing of five factors: "(1) a violation of Coast Guard regulations, (2) the plaintiff's membership in the class of intended beneficiaries of the regulations, (3) an injury of a type against which the regulations are designed to protect, (4) the unexcused nature of the regulatory violation, and (5) causation" (*Smith v Trans-World Drilling Co.*, 772 F2d 157, 160 [5th Cir 1985]; *accord Fuszek v Royal King Fisheries, Inc.*, 98 F3d at 517). With respect to the fifth factor, we note that a plaintiff in a Jones Act case bears a reduced burden of proof on the issue of causation, such that if the alleged violation played any part, even in the slightest degree, causation is established (*see Wills v Amerada Hess Corp.*, 379 F3d at 47 n 8; *Smith v Trans-World Drilling Co.*, 772 F2d at 161).

Here, plaintiffs alleged that defendants were negligent per se based upon a violation of Coast Guard Regulations (46 CFR) § 42.15-75 (d). That provision is entitled "Protection of the crew" and provides that "[s]atisfactory means (in the form of guard rails, life lines, gangways or underdeck passages, etc.) shall be

---

2. "In maritime cases, State courts must apply Federal law to secure a single and uniform body of maritime law" (*Lerner v Karageorgis Lines*, 66 NY2d 479, 484-485 [1985] [internal quotation marks and citations omitted]).

provided for the protection of the crew in getting to and from their quarters, the machinery space and all other parts used in the necessary work of the vessel" (46 CFR 42.15-75 [d]).[3] We agree with Supreme Court that plaintiffs met their burden of establishing entitlement to summary judgment on their claim of negligence per se under the Jones Act, including the burden of demonstrating prima facie that defendants violated 46 CFR 42.15-75 (d).

In connection with their motion for partial summary judgment on liability, plaintiffs contended that defendants violated the regulation because the ladder attached to the deckhouse bulkhead did not provide satisfactory means for the protection of the crew in accessing the deckhouse roof as part of the necessary work of the vessel. In that regard, they presented the affidavit of David Cole, a maritime expert and retired Coast Guard Commander, opining that the vessel at issue was a "permissively manned barge" subject to the requirements of 46 CFR 42.15-75 (d), and that the ladder was not a "satisfactory means" of getting to and from the deckhouse roof within the meaning of the regulation because it had no handrail above the deckhouse roof, and a grab bar affixed to the roof was too low to facilitate safe ascent and descent by the crew. Cole referenced a data sheet from the National Safety Council and American National Standards Institute (hereinafter ANSI) guidelines for ladders and explained that the position of this particular ladder's grab bar made it awkward and unsafe.[4] He further stated that use of the corroded antenna pole running vertically along the ladder was inevitable given the absence of a proper handrail in the same location. Cole indicated that, for these reasons, the means

---

3. As plaintiffs correctly assert, although a very general regulation will not provide a basis for liability under the Jones Act (see Wilson v Maersk Line, Ltd., 2007 WL 3085436, *2, 2007 US Dist LEXIS 81135, *6 [SD NY 2007]), 46 CFR 42.15-75 (d) has been found to be a valid predicate for a finding of negligence per se under the statute (see Wuestewald v Foss Mar. Co., 319 F Supp 2d 1002, 1008 [ND Cal 2004]; see also Pilare v Matson Nav. Co., 2006 WL 3533030, *2-3, 2006 US Dist LEXIS 88579, *5-9 [ND Cal 2006]).

4. The parties are in agreement that violations of the cited ANSI guidelines cannot, in themselves, provide a basis for a finding of negligence per se because those guidelines have not been incorporated into Coast Guard regulations (see Suthrlen v Diamond Offshore Co. Inc., 2008 WL 2540691, *4, 2008 US Dist LEXIS 47656, *12 [WD La 2008]; see generally Jones v Spentonbush-Red Star Co., 155 F3d at 595-596). As Supreme Court explained, however, Cole did not opine that defendants were negligent per se because they violated ANSI requirements; rather, he stated that the ANSI guidelines are relevant to his determination of whether the ladder provided "satisfactory means" of access within the meaning of 46 CFR 42.15-75 (d).

provided for accessing the deckhouse roof were not satisfactory for the protection of the crew and constituted a violation of 46 CFR 42.15-75 (d).

With respect to the remaining elements of a negligence per se claim—plaintiff's membership in a class of intended beneficiaries, injuries of the type against which the regulations were designed to protect, an unexcused violation, and causation (*Smith v Trans-World Drilling Co.*, 772 F2d at 160)—it is undisputed that plaintiff, as a member of the barge's crew, was an intended beneficiary if the regulation applied and that his injuries, which occurred when he fell while descending from the deckhouse roof in performing routine work on the barge, were of the requisite type (*see Wuestewald v Foss Mar. Co.*, 319 F Supp 2d at 1008). Regarding the unexcused nature of the violation, failure to comply with a regulation may be excused when there is "a present emergency or other condition [rendering compliance] . . . more dangerous than [a] violation of the regulations" (*Smith v Trans-World Drilling Co.*, 772 F2d at 161). In his expert affidavit, Cole stated his conclusion that there was nothing about the fixed deckhouse ladder or its location that would have made installation of suitable handrails and removal of the corroded antenna pole unfeasible or the ladder itself more dangerous. Finally, plaintiffs presented eyewitness testimony, as well as testimony of the captain of the tugboat that was delivering fuel to the barge, corroborating plaintiff's version of the accident—that he fell after the antenna pole that he was using as a handrail broke while he was attempting to climb down the ladder. Mindful that "the question of causation in a Jones Act claim turns on whether the acts or omissions of [defendants] contributed to [plaintiff's] injury in even the slightest degree" (*id.* at 161), we conclude that plaintiffs established prima facie entitlement to summary judgment on liability, thereby shifting the burden to defendants to demonstrate the existence of material questions of fact (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

In response, defendants presented the affidavit of their expert, Michael Russell, a retired Coast Guard Lieutenant Commander, who asserted primarily that 46 CFR 42.15-75 (d) does not apply to the vessel at issue because it is an "unmanned barge" and, thus, expressly exempted from compliance with that provision (*see* 46 CFR 42.20-13 [c]; *see generally Roy Crook & Sons, Inc. v Allen*, 778 F2d 1037, 1041-1042 [5th Cir 1985]). Although Rus-

sell acknowledged that the Coast Guard certificate of inspection designated the vessel as "Permissively Manned," he stated that the "unmanned" designation is the default classification for barges and that a permissively manned designation does not change the unmanned status of a barge. Russell's sole source of authority for this statement is a response from the Coast Guard to a question raised during a notice and comment period. The question, however, involved only manned barges and asked whether maintenance persons would "count as the barge's required manning"; it did not address the distinction between manned and unmanned barges. In our view, the Coast Guard's response that "[m]aintenance persons with no duties related to the navigation of the vessel may be permitted . . . without, in effect, increasing the manning of the barge," does not establish that—contrary to the plain meaning of the term—"permissively manned" barges must be considered to be unmanned and exempt from regulations designed to protect the safety of the barge's crew. In the absence of any further evidence to support defendants' interpretation of 46 CFR 42.15-75 (d) as inapplicable to permissively manned barges and given the evidence presented by plaintiffs that the Coast Guard deems barges to be "manned" whenever manning is either required or permitted, we cannot say that Supreme Court erred in declining to rule that permissively manned barges are exempt from 46 CFR 42.15-75 (d) as a matter of law (*see generally Morris v Pavarini Constr.*, 9 NY3d 47, 51 [2007]).

Regarding whether the ladder at issue was in compliance with that regulation, defendants' expert stated only that, "in [his] professional opinion, the fixed, individual rung ladder affixed to the after deckhouse bulkhead of [the barge] is suitable for its intended purpose of providing access, as needed, to the deckhouse roof, and therefore is in all regards compliant with the requirements of that section." Furthermore, defendants presented no evidence refuting the proof that plaintiff was a member of the barge's crew, the injury was of the type that the regulation was designed to protect against, and that compliance with the regulation was not more dangerous than noncompliance. On the issue of causation, defendants presented only a single page of plaintiff's deposition testimony indicating that he had previously used the ladder approximately 100 times without falling. We note that many of the claims now raised by defendants—including their assertions that the Coast Guard inspection certification is evidence of compliance with the

regulation, arguments regarding purported inconsistencies in the testimony regarding the cause of the accident, and their contention that the ladder was identical to those deemed compliant by Occupational Safety and Health Administration regulations—were not raised in opposition to plaintiffs' motion for partial summary judgment and, thus, are unpreserved for our review (*see e.g. County of Orange v Grier*, 30 AD3d 556, 556 [2006]; *Sager Spuck Statewide Supply Co. v Meyer*, 273 AD2d 745, 746 [2000]). In our view, the evidence that was presented in a timely manner "lacked sufficient probative value to raise a genuine issue of fact and forestall [an] award of summary judgment" (*DeLeonardis v Gaston Paving Co.*, 271 AD2d 839, 842 [2000]; *see generally Hubert v Tripaldi*, 307 AD2d 692, 693-694 [2003]).[5]

■ Turning to defendants' arguments regarding the trial held on damages, we further reject their contention that Supreme Court erred in granting plaintiffs' motion to preclude the testimony of defendants' medical expert, George Brief. " '[T]he admissibility of expert testimony on a particular point is addressed to the discretion of the trial court' " (*Goverski v Miller*, 282 AD2d 789, 790 [2001], quoting *De Long v County of Erie*, 60 NY2d 296, 307 [1983]). Brief, a board certified specialist in internal medicine and cardiology, was to testify, based upon his review of plaintiff's medical records, that plaintiff was suffering from cardiomyopathy resulting in fatigue, impaired balance and body control, which could have caused his fall. Inasmuch as the record contains no evidence that plaintiff was suffering from any symptoms related to the cardiomyopathy at the time of the fall, Supreme Court properly concluded that Brief's proposed "testimony was too speculative to constitute competent expert proof of causation" (*Pascuzzi v CCI Cos.*, 292 AD2d 685, 687 [2002] [internal quotation marks and citation omitted]; *see People v Walker*, 223 AD2d 414, 415 [1996], *lv denied* 88 NY2d 887 [1996]; *cf. Pember v Carlson*, 45 AD3d 1092, 1094 [2007]).

■ With respect to defendants' challenges regarding the jury charge given at the close of the trial, we conclude that there is no merit to their arguments that Supreme Court (Cahill, J.) erred in instructing the jury that liability had been previously

---

**5.** Defendants also asserted that the ANSI standards referenced in Cole's affidavit had not been incorporated into the Federal Code and, thus, were not applicable. As noted above, plaintiffs did not base their claim of negligence per se on an alleged violation of these ANSI standards.

determined and in refusing to give defendants' proposed charge on proximate causation. Further, their claim regarding the absence of a charge on apportionment of damages is not preserved for our review. The court's instruction that liability had been established correctly stated the procedural posture of the case given the prior grant of summary judgment in plaintiffs' favor. Moreover, a charge employing the language of proximate causation is inappropriate in the context of a Jones Act case, in which an employer is liable for damages if its "negligence played any part, even the slightest, in producing the injury or death for which damages are sought" (*Rogers v Missouri Pac. R.R. Co.*, 352 US 500, 506 [1957]; *see DeLima v Trinidad Corp.*, 302 F2d 585, 587-588 [2d Cir 1962]).

■ It must be noted, however, that despite the reduced burden of proof on causation, apportionment for injuries attributable solely to a plaintiff's preexisting conditions is nevertheless appropriate in Jones Act cases.[6] Here, defendants requested an apportionment charge that would have relieved them of the burden of proof regarding the extent of the damages caused by plaintiff's preexisting conditions. Plaintiffs, in response, contended that the burden of proof regarding preexisting conditions and the apportionment of damages to those conditions should be placed on defendants (*see generally Stevens v Bangor & Aroostook R.R. Co.*, 97 F3d 594, 601-602 [1st Cir 1996]; *Maurer v United States*, 668 F2d 98, 100 [2d Cir 1981]; *Ahlf v CSX Transp., Inc.*, 386 F Supp 2d 83, 91 [ND NY 2005]). Inasmuch as defendants failed to thereafter clearly articulate on the record any further objections with respect to an appropriate charge on apportionment—as opposed to the charge given on negligence and proximate cause—they failed to preserve their current argument now advanced before us that Supreme Court erred in declining to give *any* charge on the issue of apportionment, without regard to the burden of proof (*see Hunt v Bankers & Shippers Ins. Co. of N.Y.*, 50 NY2d 938, 940 [1980]; *Klotz v Warick*, 53 AD3d 976, 978-979 [2008], *lv denied* 11 NY3d 712 [2008]; *Morris v Patane*, 39 AD3d 1054, 1055 [2007]).

■■ Finally, we are unpersuaded by defendants' arguments that the verdict is not supported by the evidence and that the

---

**6.** That is, if "a defendant's negligence aggravates a plaintiff's pre-existing health condition, the defendant is liable only for the additional increment caused by the negligence and not for the pain and impairment that the plaintiff would have suffered even if the accident had never occurred" (*Stevens v Bangor & Aroostook R.R. Co.*, 97 F3d 594, 601 [1st Cir 1996]).

jury's award on damages was excessive. A verdict will be stricken for legal insufficiency when " 'there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial' " (*Nolan v Union Coll. Trust of Schenectady, N.Y.*, 51 AD3d 1253, 1255 [2008], *lv denied* 11 NY3d 705 [2008], quoting *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). Furthermore, "[i]n evaluating the excessiveness of awards of damages in [Jones Act] cases, the courts apply the federal standard of whether the damages awarded are so excessive as to shock [the] judicial conscience" (*Hotaling v CSX Transp.*, 5 AD3d 964, 970 [2004] [internal quotation marks and citation omitted]). Here, given the testimony of plaintiff's life care planner, as well as the evidence that plaintiff fractured his hip, underwent multiple surgeries, is permanently disabled from work, and has suffered from extreme pain since the fall due to causally related reflex sympathetic dystrophy, we cannot say that the verdict is unsupported by sufficient evidence or that the jury's award shocks the conscience (*see id.* at 969-970; *Serrano v 432 Park S. Realty Co., LLC*, 59 AD3d 242, 242-243 [2009]; *see also Young v Tops Mkts.*, 283 AD2d 923, 924-925 [2001]).

Defendants' remaining arguments have been considered and found to be lacking in merit.

ROSE, KANE and GARRY, JJ., concur.

Ordered that the orders and judgment are affirmed, with costs.